1  Matthew Righetti (SBN 121012)
2  John Glugoski (SBN191155l)
   RIGHETTI GLUGOSKI, P.C.
3  37 Graham Street, Suite 130
   San Francisco, California 94129
4  Telephone:   (415) 983-0900
5  Facsimile:    (415) 397-9005

6  *Attorneys for Plaintiff* REUBEN NATHAN
7  and the alleged Class

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10
11

12  **REUBEN NATHAN**, individually and          Case No. _____
13  on behalf of all others similarly situated,
                                                  **CLASS ACTION COMPLAINT**
14              Plaintiff,
                                                  **JURY TRIAL DEMANDED**
15
16
17
18  v.
19
20
21  **REFORM SOLUTIONS**
    **INCORPORATED, LENDING 3,**
22  **INC.; TITAN MUTUAL LENDING**
    **INC.**
23
24
25              Defendant.
26
27
28

1    Plaintiff Reuben Nathan ("Nathan" or "Plaintiff") brings this Class Action
2    Complaint and Demand for Jury Trial ("Complaint") against Defendants REFORM
3    SOLUTIONS INCORPORATED ("Reform Solutions"), LENDING 3, INC.
4    ("Lending 3"), Defendant TITAN MUTUAL LENDING INC. ("Titan") to: (1) stop
5    Defendant's practice of placing auto-dialed calls to cellphone owners; and (2) obtain
6    damages for all persons similarly injured by Defendant's conduct. Plaintiff, for his
7    Complaint, alleges as follows upon personal knowledge as to himself and his own
8    acts and experiences, and, as to all other matters, upon information and belief,
9    including investigation conducted by his attorneys.

10                           **JURISDICTION & VENUE**

11    1.    The Court has subject matter jurisdiction over this action pursuant to 28
12    U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47
13    U.S.C. § 227, *et seq.*, ("TCPA" or the "Act") a federal statute. The Court also has
14    jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"). The
15    alleged Class consists of over 100 persons, there is minimal diversity, and the claims
16    of the class members when aggregated together exceeds $5 million. Further, none of
17    the exceptions to CAFA applies.

18    2.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff
19    received the unlawful calls in this District, the decision to make the calls emanated
20    from this District, and the calls were directed to persons residing, at least in part, in
21    this District.

22                                **PARTIES**

23    3.    Plaintiff Nathan is a natural person residing in Orange County and is a
24    citizen of the State of California.

25    4.    Defendant Reform Solutions Incorporated ("Reform Solutions") is a
26    corporation incorporated and existing under the laws of the State of Calif

27
28

5.     ornia whose corporate headquarters is located at 16002 Legacy Dr., # 201  Tustin, California, 92782.

6.     Defendant Lending 3 , Inc. ("Lending 3") is a corporation incorporated and existing under the laws of the State of California  whose corporate headquarters is located at 17220 Newhope St., Suite 213  Fountain Valley, California, 92708.

7.     Defendant Titan Mutual Lending Inc. ("Titan") is a corporation incorporated and existing under the laws of the State of California whose corporate headquarters is located at 250 Commerce Suite 200, Irvine, California 92602.

8.     For purposes of this Complaint, Reform Solutions, Lending 3 and Titan will be collectively referred to as "Defendants."   On information and belief, Defendants have engaged in a common scheme and practice to solicit and generate business by engaging in a telemarketing campaign that implements the use of an automatic telephone dialing system in violation of TCPA, 47 U.S.C. § 227, *et seq.*

## COMMON FACTUAL ALLEGATIONS

8.   Reform Solutions is a Marketing Lead Generator and a Duly Licensed Mortgage broker that generates leads via telemarketing (and potentially through other means).

9.     Lending3 is an agent, representative and or partner of Reform Solutions and is a Marketing Lead Generator and a Duly Licensed Mortgage broker that generates leads via telemarketing (and potentially through other means).

10.     Titan is a mortgage lender that provides consumers with a variety of mortgage products. On information and belief, Titan purchases leads from telemarketing companies such as Reform Solutions and Lending 3 in order to generate business.

11.     All of the calls at issue in this case were made by and/or the direction of Reform Solutions, Reform Solutions agent, Lending3 and/or Titan using an auto

dialer for its own benefit and as a lead aggregator to generate business.

12.     Unfortunately for consumers, Defendants, in an attempt to secure new business, engaged in an aggressive telemarketing campaign—often stepping outside the law in the process.

13.     Specifically, Defendants used an automatic telephone dialing system ("ATDS") to make unsolicited telemarketing calls to cellphone numbers.

14.     While such calls to landlines may be permitted under the Act, it is a plain violation of the TCPA, 47 U.S.C. § 227, *et seq.* to make such calls to cellphones.

15.     Notably, marketers who wish to avoid calling cellphone numbers are able to segregate their calls lists to identify cellphone numbers.

16.     Defendants made unsolicited calls to the cellphones of Plaintiff and others.

17.     Rather than adhere to the TCPA, Defendants placed repeated calls to consumers who never provided consent (either orally or in writing) to receive such calls.

18.     By making unauthorized telemarketing calls as alleged herein, Defendants have caused consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the placement and receipt of such calls, in addition to the wear and tear on their telephones, consumption of battery life, lost ability to place outgoing calls and other interruption in use, cellular minutes, loss of value realized for the monies consumers paid to their carriers for the receipt of such calls, and other diminished use, enjoyment, value, and utility of their cellphones and cellphone plans.

19.     Furthermore, the calls trespassed against and interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to

access, their cellphones, including the related data, software, applications, and hardware components.

20.    Defendants knowingly made, and continues to make, repeated autodialed telemarketing calls to cellphone owners without the prior express consent of the recipients.

21.    As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

22.    The calls were made by and at the direction of Reform Solutions, Lending 3 and/or Titan and/or with Reform Solution, Lending 3 and/or Titan's full knowledge, consent, and approval. Further, Reform Solutions, Lending 3 and Titan each had control over all aspects of the calls including who was called and when, how many times a number would be called, whether or not to accept the call in question, and whether to proceed or decline to proceed with the call once contact was/is actually made. On information and belief, Plaintiff herein asserts that Defendants worked in tandem with each other based on the timing, scheduling, and availability of each to effectuate making unsolicited sales pitches to Plaintiff and members of the putative class by illegally autodialing them.

23.    The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case.

24.    In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class, together with costs and reasonable attorneys' fees.

/ / /

## FACTS SPECIFIC TO PLAINTIFF NATHAN

25.   Plaintiff Nathan is the owner and customary user of a cellphone number ending in 1237.

26.   At no time did Nathan provide his cellphone number to Defendants or provide Defendants, or any of Defendants' agents, with prior express consent to call.

27.   On or about October 14, 2019, Plaintiff received an autodialed call to his cellphone from Defendants, at which time he informed Defendants that he was not interested in Defendants' solicitation.

28.   On or about December 9, 2019, Plaintiff received another autodialed call to his cellphone from Defendants again despite informing them that he was not interested pursuant to the after having told them on October 14, 2019 he was not interested.

29.   On the December 9, 2019 call, Plaintiff heard a pause and click or delayed beep on the call and connection, indicative of an ATDS.

30.   All of the calls were made by agents or employees of Reform Solutions, Lending 3 and Titan. Defendants had knowledge, directed, ratified, and benefitted from the calls, which on information and belief were made by Defendants or persons acting on behalf of Defendants.

31.   Indeed, after receiving the December 9, 2019 calls from Reforms Solutions agent, Lending3, following the pause and click or delayed beep on the call, the call was connected by Reform Solutions agent, representative and/or partner Lending 3 to a person referred to by Lending 3 as one of their "licensed bankers."

32.   The licensed banker was really a financial loan lending service company, such as Titan who would then accept the call, or require that the call be made at a later time due to the loan lending service companies, such as Titan's unavailability to proceed with the call at that time.

33.     With respect to Plaintiff, upon connecting the autodialed call, the Lending 3 telephone representative identified herself as "April" to Plaintiff and as someone working for Defendants.  April attempted to transfer the call to another person referred to by her as one of her licensed bankers "Gunner" who she explained was unable to take the call and had requested that due to his unavailability that the call be made and transferred to him at a later time. Then, a second call was made the same day by the same person, "April" at a later time in the day, which was made at the direction of Gunner.  At that time, the call was then transferred to Titan pursuant to Titan's i.e. Gunner's instructions. Gunner then began to make the sales pitch to Plaintiff, which was made on Titan's time, at its directions, thereby exercising control of the details of the call in conjunction with Reform Solution and Lending 3.

34.     Prior to receiving the above-referenced calls, Plaintiff had no relationship with Defendants, had never provided their telephone number directly to Defendants, and had never requested that Defendants place calls to it or to offer it any services.

35.     Simply put, Plaintiff has never provided any form of prior express consent to Defendants to place telemarketing calls to his cellphone number and has no business or other relationship with Defendants.

36.     Defendant was, and remains, aware that the above-described telemarketing calls were made to consumers like Plaintiff and Defendants was never provided prior express consent to receive them.

37.     By making unsolicited calls as alleged herein, Defendants has caused Plaintiff and members of the Class actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such calls, in addition to the wear and tear on their cellphones, interference with the use of their phones, consumption of battery life, loss of value realized for the monies consumers

paid to their wireless carriers for the receipt of such calls, and the diminished use, enjoyment, value, and utility of their telephone plans.

38.     Furthermore, Defendants made the calls knowing that they trespassed against and interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their phones, including the related data, software, and hardware components.

39.     To redress these injuries, Plaintiff, on behalf of himself and the Class of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited telemarketing calls to cellular telephones.

40.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unauthorized calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action in accordance with Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class defined as follows:

> **Autodialed Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) Defendants caused to be called; (3) on the person's cellphone; (4) for the same purpose as Defendant called Plaintiff; (5) using the same equipment that was used to call the Plaintiff, and (6) for whom Defendants claims it obtained prior express consent in the same manner as Defendants claims it obtained prior express consent to call the Plaintiff.

42.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely

request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons.

43.     Plaintiff anticipates the need to amend the class definition following a period of appropriate discovery regarding, *inter alia*, the purpose of the calls, the equipment used to make the calls, and any supposed prior express consent.

44.     **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendants has placed telemarketing calls to thousands of consumers who fall into the defined Class. The number of members of the Class and class membership can be identified through objective criteria, including Defendants' phone records.

45.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained the same legal injuries and damages arising out of Defendants' uniform wrongful conduct. If Plaintiff has an entitlement to relief, so do the rest of the Class Members.

46.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA. Neither Plaintiff nor his counsel has any interest in conflict with or antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

47.     **Commonality and Predominance:** There are questions of law and fact common to the claims of Plaintiff and the Class, and those questions will drive the litigation and predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to

the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether the calls were made on behalf of Defendant and/or whether Defendant knew about, approved, or benefitted from the calls;

(c)     Whether Defendants had prior express consent to place the calls;

(d)     Whether the calls were made using an ATDS;

(e)     Whether Defendants' conduct was willful or knowing such that members of the Class are entitled to treble damages; and

(f)     Whether Defendants should be enjoined from engaging in the illegal conduct herein alleged.

48.     **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendants have acted or refused to act on grounds substantially similar towards all members of the Class so as to render certification of the Class for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

49.     **Superiority & Manageability:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

50.     It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this

1   Complaint.

2        By contrast, a class action presents far fewer management difficulties and

3   provides the benefits of single adjudication, economies of scale, and comprehensive

4   supervision by a single Court. Economies of time, effort and expense will be fostered

5   and uniformity of decisions ensured. Also, there are no pending governmental actions

6   against Defendants for the same conduct.

7                           **FIRST CAUSE OF ACTION**
                         **Violation of 47 U.S.C. § 227,** *et seq.*
8               **(On behalf of Plaintiff and the Autodialed Class)**

9        51.    Plaintiff incorporates the foregoing allegations as if fully set forth

10   herein.

11        52.    Defendants made or caused to be made calls to Plaintiff's and the other

12   Autodialed Class Members' cellphones.

13        53.    These calls were made using equipment that had the capacity to store or

14   produce telephone numbers using a random or sequential number generator, to

15   receive and store lists of phone numbers, and to dial such numbers, *en masse*, without

16   human intervention.

17        54.    The telephone dialing equipment utilized by Defendants, also known as

18   a predictive dialer, dialed numbers from a list, or dialed numbers from a database of

19   telephone numbers, in an automatic and systematic manner. Defendants' autodialer

20   disseminated information *en masse* to Plaintiff and other consumers and is an ATDS

21   under the TCPA.

22        55.    The calls were made by Defendants for telemarketing purposes,

23   specifically to apprise Plaintiff and others of the availability of loan lending services

24   of loan lending service companies such as Titan on whose behalf Defendants make

25   said autodialing telephone calls.

26   / / /

27

28

56.   Defendants are responsible for making the calls.

57.   Neither Plaintiff nor any other consumer ever provided prior express consent under the TCPA to be called by Defendants.

58.   As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Autodialed Class suffered actual damages and, under section 47 U.S.C. § 227(c)(5), Plaintiff and each member of the Autodialed Class are each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

59.   Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Class.

60.   Plaintiff and the Autodialed Class members are also entitled to injunctive relief and corresponding declaratory relief as necessary to prevent their future receipt of Defendants' unlawful calls.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Nathan, on behalf of himself and the Class, prays for the following relief:

A.   An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

B.   An order declaring that Defendants' actions, as set out above, violate the TCPA;

C.   An injunction requiring Defendants to cease all telemarketing calls to cellphones whose owners/users have requested to no longer receive calls, together with a declaration that Defendant used an ATDS in violation of the TCPA;

D.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

E.    An award of trebled damages if willful or knowing violations are shown;

F.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

G.    Such other and further relief that the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

DATED: August 4, 2020                    **RIGHETTI · GLUGOSKI, P.C.**

                                          /s/ John Glugoski
                                          John Glugoski
                                          Attorney for Plaintiff and the Class